1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**
9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   MARIA GONZALEZ, et al.,                    CASE NO. CV F 11-1284 LJO GSA
12                         Plaintiff,           **ORDER TO DISMISS**
             vs.                                (Docs. 5,6.)
13
     NATIONSTAR MORTGAGE, et al,
14
                         Defendants.
15   _____/
16                            **INTRODUCTION**
17        Several defendants[1] seek to dismiss as legally barred pro se plaintiffs' Maria Gonzalez ("Ms.
18   Gonzalez") and Gonzalo Gonzalez' (collectively "plaintiffs'") claims arising out of foreclosure of
19   plaintiffs' Bakersfield property ("property").  This Court construes plaintiffs' action as an attempt to
20   thwart or complicate non-judicial foreclosure and subsequent transfer of the property.  For the reasons
21   discussed below, this Court DISMISSES this action against defendants based on plaintiffs' absence of
22   credible claims and abuse of judicial process and VACATES the September 19, 2011 hearing, pursuant
23   to Local Rule 230(g).
24                            **BACKGROUND**
25                 **Plaintiffs' Loan And Property Foreclosure**
26   _____
           [1]     Defendants SunTrust Mortgage, Inc. ("SunTrust"), Mortgage Electronic Registration Systems, Inc.
27   ("MERS"), Nationstar Mortgage LLC ("Nationstar"), and Federal National Mortgage Association ("Fannie Mae") seek
     F.R.Civ.P. 12(b)(6) dismissal of plaintiffs' claims.  This Court will refer to Suntrust, MERS, Nationstar and Fannie Mae
28   collectively as "defendants."

                                    1

1    Ms. Gonzalez borrowed $346,621 from SunTrust to purchase the property and executed a Deed

2    of Trust ("first DOT"), recorded on April 18, 2007,[2] to secure the loan.  The first DOT identified Ms.

3    Gonzalez as borrower, SunTrust as lender, and MERS as beneficiary.  Ms. Gonzalez obtained another

4    $86,656 loan from SunTrust and executed another Deed of Trust ("second DOT"), recorded on April

5    18, 2007, to secure the second loan.  The second DOT identified Ms. Gonzalez as borrower, SunTrust

6    as lender, and MERS as beneficiary.

7    Ms. Gonzalez defaulted on loan payments, and a Notice of Default and Election to Sell Under

8    Deed of Trust was recorded on June 11, 2008 to reflect past due amounts of $10,300.24 as of June 9,

9    2008.  A Notice of Trustee's Sale was recorded on September 7, 2010 to set an October 1, 2010

10   foreclosure sale and to indicate an estimated $401,597.31 owed on Ms. Gonzalez' loans.[3]

11   On September 30, 2010, the day prior to the scheduled foreclosure sale, plaintiffs filed a Chapter

12   7 voluntary bankruptcy petition to compel postponement of the foreclosure sale.  Plaintiffs did not list

13   this action as a potential claim in their bankruptcy schedules.  SunTrust sought relief from the automatic

14   bankruptcy stay, and the bankruptcy court permitted foreclosure to proceed.  The bankruptcy was

15   dismissed on February 17, 2011.

16   Fannie Mae purchased the property at a May 16, 2011 trustee's sale, and a Trustee's Deed Upon

17   Sale was recorded on May 20, 2010 to transfer the property's title to Fannie Mae.

18   **Plaintiff's Claims**

19   Plaintiffs proceed on their Complaint ("complaint"), filed on July 13, 2011 in Kern County

20   Superior Court prior to removal to this Court.  The complaint purports to allege claims based on federal

21   and California statutory violations and California common law.  The complaint makes references to

22   "unconscionable acts and violations of civic law," "no right of indebtedness to initiate or maintain

23   foreclosure," "violations of law and public policy," "fraudulent loan securitization scheme," "failed

24   promises," and "unclean hands."  The complaint references various legal authorities, including federal

25   

26   [2]    All documents pertaining to Ms. Gonzalez' loan and property foreclosure were recorded in the Kern County
        Official Records.

27   

28   [3]    On December 6, 2010, the underlying note and beneficial interest under the first DOT was assigned to
        Nationstar.

2

1  and California statutes and judicial decisions.  The complaint seeks to prevent transfer of the property's

2  title.

3  **DISCUSSION**

4  **Sua Sponte Dismissal**

5  Defendants characterize the complaint as "fatally uncertain, nonsensical," and lacking "facts to

6  constitute any cause of action."  Defendants describe the complaint as "a mess of inchoate allegations

7  that do not even approach the applicable pleading standards" and fault the complaint's lumping

8  "defendants together."

9  "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal

10  may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*

11  *Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua

12  sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S.

13  319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,

14  745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte

15  prior to service of process on defendants).

16  "When a federal court reviews the sufficiency of a complaint, before the reception of any

17  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

18  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

19  claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

20  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

21  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

22  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

23  *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

24  In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

25  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

26  can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

27  F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

28  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

3

*Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged."  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

First, the tenet that a court must accept as true all of the allegations contained in

4

a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

As discussed below, the complaint is subject to dismissal in the absence of claims supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.

**Failure To Satisfy F.R.Civ.P. 8**

The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v.*

*Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim.  *Jones*, 733 F.2d at 649.   A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting  *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).  The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The complaint fails to satisfy F.R.Civ.P. 8.  The complaint lacks cognizable facts of defendants' purported wrongdoing to provide fair notice as to what each defendant is to defend.  The complaint appears to decry the home loan industry and securities practices.   The complaint makes passing references to lending and foreclosure laws but fails to connect them to events involving plaintiffs and/or defendants.  The complaint throws out terms, such as, "unconscionable acts and violations of civic law," "no right of indebtedness to initiate or maintain foreclosure," "violations of law and public policy," "fraudulent loan securitization scheme," "failed promises," and "unclean hands" without meaningful reference to the parties.  The complaint lacks cognizable claims or legal theories upon which to support defendants' liability.   The complaint lacks specific, clearly defined allegations to give fair notice of claims plainly and succinctly to warrant dismissal of this action.

**Judicial Estoppel**

Judicial estoppel also bars the complaint's global claims.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  Judicial estoppel is invoked "to prevent a party from gaining an advantage by taking inconsistent positions." *Hamilton*, 270 F.3d at 782. Judicial estoppel is invoked also "because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing

1   fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

2          Factors to determine application of judicial estoppel include whether:

3          1.      A party's later position is "clearly inconsistent" with its earlier position;

4          2.      The party succeeded to persuade a court to accept its earlier position "so that judicial

5                  acceptance of an inconsistent position in a later proceeding would create the perception

6                  that either the first or second court was misled"; and

7          3.      The party asserting an inconsistent position "would derive an unfair advantage or impose

8                  an unfair detriment on the opposing party if not estopped."

9   *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 1815 (2001) (internal quotations and citations

10  omitted).

11         These factors "do not establish inflexible prerequisites or an exhaustive formula for determining

12  the applicability of judicial estoppel.  Additional considerations may inform the doctrine's application

13  in specific factual contexts." *Hamilton*, 270 F.3d at 783.

14         "[J]udicial estoppel is not limited to bar the assertion of inconsistent positions in the same

15  litigation" and is "appropriate to bar litigants from making incompatible statements in two different

16  cases." *Hamilton*, 270 F.3d at 783.  "In the bankruptcy context, a party is judicially estopped from

17  asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's

18  schedules or disclosure statements."  *Hamilton*, 270 F.3d at 783; *see Hay v. First Interstate Bank of

19  Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (failure to give notice of potential cause of action in

20  bankruptcy schedules and disclosure statements estops debtor from prosecuting that cause of action).

21         Plaintiffs' bankruptcy delayed foreclosure, however, plaintiffs failed to disclosed their purported

22  claims in this action in their bankruptcy schedules.  Such failure warrants application of judicial estoppel

23  to bar plaintiffs' claims in this action.

24                              **Failure To Tender Indebtedness**

25         Plaintiffs' failure to tender, and apparent inability to tender, the amount owing on the Ms.

26  Gonzalez' loans further dooms plaintiffs' claims.

27         "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds

28  Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

                                           7

1    Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

2    (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

3    *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the

4    creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."

5    *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

6         A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

7    indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

8    *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

9    1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee

10   under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale,

11   even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88

12   Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

13        In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157

14   (1989), the California Court of Appeal explained:

15             . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or
               procedure should be accompanied by an offer to pay the full amount of the debt for
16             which the property was security." . . . . This rule . . . is based upon the equitable maxim
               that a court of equity will not order a useless act performed. . . . "A valid and viable
17             tender of payment of the indebtedness owing is essential to an action to cancel a voidable
               sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not
18             have redeemed the property had the sale procedures been proper, any irregularities in the
               sale did not result in damages to the plaintiffs.  (Citations omitted.)
19

20        An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state

21   a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15

22   Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no

23   effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851

24   (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the

25   offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92

26   Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical

27   ground that notice was improper, if the party making the challenge did not first make full tender and

28   thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western*

1   *Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action

2   'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid

3   tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

4         "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without

5   paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v.*

6   *Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain

7   an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475,

8   477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").  "A party

9   may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of

10   trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations

11   has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

12         Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do

13   equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the

14   plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

15   into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d

16   791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing

17   is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,

18   92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common

19   law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating

20   nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108

21   Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

22         "The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105

23   Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is

24   necessary on his part to complete the transaction, and must fairly make known his purpose without

25   ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is

26   made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

27   1165, 246 Cal.Rptr. 421 (1988).   The debtor bears "responsibility to make an unambiguous tender of

28   the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Neither the complaint nor record references plaintiffs' tender of indebtedness or meaningful ability to do so. The record's silence on plaintiffs' tender of or ability to tender amounts outstanding is construed as their concession of inability to do so. Without plaintiffs' meaningful tender, plaintiffs seek empty remedies, not capable of being granted and their purported claims are doomed.

Turning to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., the "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation. (Bold added.)

Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto*

10

*v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).   The Ninth Circuit Court of Appeals, relying on *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted."   *See Yamamoto*, 329 F.3d at 1172.   Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations."   *Yamamoto*, 329 F.3d at 1173.   The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that

11

1   borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial

2   judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy

3   of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

4   1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds

5   given the lender's non-egregious TILA violations and equities heavily favoring the lender).[4]

6        The complaint does not address conditions precedent to permit rescission under TILA.  The

7   complaint is not a timely, valid rescission notice.  "Clearly it was not the intent of Congress to reduce

8   the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the

9   loan without interest."  *American Mortgage*, 486 F.3d at 820-821.  Without plaintiffs' meaningful

10  tender, their purported claims, including those referencing TILA, are doomed.

### Foreclosure Sale Presumption

12       The complaint's gravamen is to challenge foreclosure of the property.  Plaintiffs' inability to

13  overcome presumption of a foreclosure sale's validity dooms further their claims.

14       Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

15  trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

16  in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of

17  trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment

18  of the loan."  *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).

19  A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid."  *Alliance*

20  *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

21       If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

22  may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

---

24    [4]     The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

25          Congress did not intend to require a lender to relinquish its security interest when it is now known that the
26          borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender
            in discharging the prior obligations of the borrowers.

27  *Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule, a trustee's sale is complete upon acceptance of the final bid."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003).  "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted).  "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'"  *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)).  "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity."  *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code

sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940). A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).  As the California Supreme Court explained decades ago:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale.

*Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248, 101 P.2d 77 (1940).

The complaint lacks facts of a specific statutory irregularity or misconduct in the foreclosure proceedings.  The complaint's attempt to challenge foreclosure validity offers nothing to support a discrepancy in the foreclosure process to warrant dismissal of plaintiffs' claims.  The complaint lacks allegations to overcome the presumption of foreclosure sale validity.[5]

## **Attempt At Amendment And Malice**

As discussed above, the complaint's global claims are barred legally, and this Court need not address defendants' additional valid grounds to dismiss the claims.  Since the complaint's claims are insufficiently plead and barred legally, plaintiffs are unable to cure their claims by allegation of other facts and thus are not granted an attempt to amend.

Moreover, this Court surmises that plaintiffs brought this action in absence of good faith and that plaintiffs seek to exploit the court system solely for delay or to vex defendants.  The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

---

[5] The presumption is further bolstered by the Trustee's Deed of Sale, which provides: "All requirements of law regarding the mailing of copies of the Notice of Default and Election to Sell, and the recording, posting, and publication of the Notice of Trustee's Sale have been complied with."

14

inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.     DISMISSES with prejudice this action against defendants;

2.     DIRECTS the clerk to enter judgment against plaintiffs Maria Gonzalez and Gonzalo
       Gonzalez and in favor of defendants SunTrust Mortgage, Inc., Mortgage Electronic
       Registration Systems, Inc., Nationstar Mortgage LLC, and Federal National Mortgage
       Association Bank of America, N.A., in that there is no just reason to delay to enter such
       judgment given that plaintiffs' claims against these defendants and their alleged liability
       are clear and distinct from claims against and liability of other defendants.  *See*
       F.R.Civ.P. 54(b); and

3.     ORDERS plaintiffs, no later than September 7, 2011, to file papers to show cause why
       this Court should not dismiss this action against defendants Lennar Corporation, Lennar
       Homes of California, Inc., and Recontrust Company.

**This Court ADMONISHES plaintiffs that this Court will dismiss this action against defendants Lennar Corporation, Lennar Homes of California, Inc., and Recontrust Company if plaintiffs fail to comply with this order and fail to file timely papers to show cause why this Court should not dismiss this action against defendants Lennar Corporation, Lennar Homes of California, Inc., and Recontrust Company.**

IT IS SO ORDERED.

**Dated:     August 29, 2011**                  **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE